1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BRETT W. ALLEN,                            No.  2:14-cv-00210-AC

12                  Plaintiff,

13         v.                                    ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                   Defendant.
16

17

18         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying his application for period of disability and disability insurance

20   benefits ("DIB") under Title II of the Social Security Act and supplemental security income

21   ("SSI") under Title XVI of the Act.  Plaintiff's motion for summary judgment is pending.  For the

22   reasons discussed below, the court will grant plaintiff's motion for summary judgment.

23                           PROCEDURAL BACKGROUND

24         Plaintiff filed his application for DIB on February 4, 2010, and his application for SSI on

25   January 15, 2010, both of which alleged disability beginning on June 7, 2007.  Administrative

26   Record ("AR") 28.  Plaintiff's application was denied initially and again upon reconsideration.

27   Id.  On March 1, 2012, a video hearing was held before administrative law judge ("ALJ") John D.

28   Moreen.  Id.; AR 37.  Plaintiff appeared with an attorney at the hearing, at which he and a

vocational expert testified.  AR 28.  In a decision dated March 21, 2012, the ALJ found plaintiff not disabled.  AR 37.

The ALJ made the following findings (citations to 20 C.F.R. and Exhibits omitted):

> 1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.
>
> 2.   The claimant has not engaged in substantial gainful activity since June 7, 2007, the alleged onset date.
>
> 3.   The claimant has the following severe impairments: moderately sized anteroseptal defect and small apical fixed defect, cortical irregularity involving the posteromedial aspect of the right tibial plateau, small suprapatellar joint effusion, moderate osteoarthritis of the right knee, type II non-insulin-dependent diabetes mellitus, cardiomegaly with cardiomyopathy, chronic obstructive pulmonary disease, congestive heart failure with left ventricular dysfunction, sleep apnea, obesity, mild chondromalacia of the medical patellar facet, right knee joint effusion, degenerative changes with osteophytic ridging both medially and laterally, findings suspicious for a tear of the posterior horn of the medial meniscus, minimal degenerative osteophyte formation of the right knee, dysfunction of the major joints, essential hypertension, and chronic pulmonary insufficiency.
>
> 4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> 5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except that the claimant can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, can sit six hours in an eight-hour day (with normal breaks), and needs an extra break during the workday in addition to the standard one morning break and one afternoon break.
>
> 6.   The claimant is unable to perform any past relevant work.
>
> 7.   The claimant was born on October 22, 1964 and was 42 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45–49.
>
> 8.   The claimant has at least a high school education and is able to communicate in English.
>
> 9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

1

       10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

2

3

       11.   The claimant has not been under a disability, as defined in the Social Security Act, from June 7, 2007, through the date of this decision.

4

5

AR 30–37.

6
     Plaintiff requested review of the ALJ's decision by the Appeals Council, but it denied

7
review on October 24, 2013, leaving the ALJ's decision as the final decision of the Commissioner

8
of Social Security.  AR 4–6.

9
FACTUAL BACKGROUND

10
     Born on October 22, 1964, plaintiff was 42 years old on the alleged onset date of

11
disability and 47 years old at the time of the administrative hearing.  AR 28, 36.  Plaintiff has not

12
engaged in substantial gainful activity since 2003, when he worked as a mechanic.  AR 244.

13
LEGAL STANDARDS

14
     The Commissioner's decision that a claimant is not disabled will be upheld if the findings

15
of fact are supported by substantial evidence in the record and the proper legal standards were

16
applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000);

17
Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel,

18
180 F.3d 1094, 1097 (9th Cir. 1999).

19
     The findings of the Commissioner as to any fact, if supported by substantial evidence, are

20
conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

21
more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th

22
Cir. 1996).  "It means such evidence as a reasonable mind might accept as adequate to support a

23
conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v.

24
N.L.R.B., 305 U.S. 197, 229 (1938)).  "While inferences from the record can constitute

25
substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v.

26
Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

27
     Although this court cannot substitute its discretion for that of the Commissioner, the court

28
nonetheless must review the record as a whole, "weighing both the evidence that supports and the

3

1    evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec' y of Health and

2    Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th

3    Cir. 1985).

4        "The ALJ is responsible for determining credibility, resolving conflicts in medical

5    testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)

6    (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation,

7    one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v.

8    Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons

9    stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not

10   rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d

11   871, 874 (9th Cir. 2003).

12       The court will not reverse the Commissioner's decision if it is based on harmless error,

13   which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

14   ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

15   2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

16   Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

17                                    ANALYSIS

18       Plaintiff seeks summary judgment on the grounds that (1) the ALJ erred by not according

19   plaintiff's treating physician controlling weight; and (2) the ALJ's determination that plaintiff has

20   the ability to perform jobs that exist in significant numbers in the national economy is not

21   supported by substantial evidence.  The Commissioner, in turn, argues that the ALJ's decision is

22   supported by substantial evidence and is free from legal error.

23   A.    Opinion Evidence

24       As a treating physician, the opinion of primary care physician Dr. Harvey Sternberg,

25   M.D., would ordinarily be accorded controlling weight.  However, the ALJ refused to grant such

26   weight to Dr. Sternberg's opinion that plaintiff needs unscheduled breaks of 15 minutes every one

27   to two hours and is likely to be absent more than four times a month because he found that it was

28   not well supported. AR 35.  While the ALJ asserted reasons for according "less" weight to Dr.

4

1    Sternberg's opinion, the court finds that the ALJ erred for the reasons discussed below.

2        1.    Legal Standards

3        In the Ninth Circuit, courts "distinguish among the opinions of three types of physicians:

4    (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the

5    claimant (examining physicians); and (3) those who neither examine nor treat the claimant

6    (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more

7    weight should be given to a treating physician's opinion than to those who do not treat the

8    claimant.  Id.  A treating physician's opinion that is given controlling weight "must be adopted."

9    See Social Security Ruling ("SSR") 99–2p ("Giving Controlling Weight to Treating Source

10   Medical Opinions," at ¶ 6).[1]  To accord a treating physician's opinion controlling weight, the

11   opinion must be (1) "well-supported by medically acceptable clinical and laboratory diagnostic

12   techniques"; and (2) "'not inconsistent' with the other substantial evidence in the case record."

13   See Orn, 495 F.3d at 631.  "Not inconsistent" means that "no other substantial evidence in the

14   case record . . . contradicts or conflicts with the opinion"; "substantial evidence" means "more

15   than a mere scintilla" such that a "reasonable mind would accept as adequate to support a

16   conclusion."  SSR 96–7p (Explanation of Terms).

17       "If a treating doctor's opinion is not contradicted by another doctor (i.e., there are no other

18   opinions from examining or nonexamining sources), it may be rejected only for 'clear and

19   convincing' reasons supported by substantial evidence in the record."  See Ryan v. Comm'r of

20   Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th Cir. 2008); Lester, 81 F.3d at 830.  "If the ALJ

21   rejects a treating or examining physician's opinion that is contradicted by another doctor, he must

22   provide specific, legitimate reasons based on substantial evidence in the record."  Valentine v.

23   Comm'r of Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); Ryan, 528 F.3d at 1198.[2]  "The

24   _____

25   [1] "SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless."  Bray v.
     Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009).  The Ninth Circuit gives them
26   deference so long as they do not produce "a result inconsistent with the statute and regulations."
     Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).

27   [2] As to the appropriate standard to apply in this case, the opinion of Dr. Jose Ruiz, M.D., a non-
     examining physician, differs somewhat from Dr. Sternberg's.  AR 100–03, 637–38, 640–41.
28   (continued...)

5

1   ALJ can meet this burden by setting out a detailed and thorough summary of the facts and

2   conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes

3   v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  Furthermore, "[w]hen an examining physician

4   relies on the same clinical findings as a treating physician, but differs only in his or her

5   conclusions, the conclusions of the examining physician are not 'substantial evidence.'" Orn, 495

6   F.3d at 632.

7        Treating physicians' subjective judgments are important, and "properly play a part in their

8   medical evaluations." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  "The ALJ must

9   explain his own interpretations, and cannot merely list contrary opinions when stating that a

10   treating physician's opinion is unsupported." Boardman v. Astrue, 286 F. App'x 397, 399–400

11   (9th Cir. 2008) (citing Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294 (9th Cir.

12   1999)).  If the ALJ fails to provide adequate reasons for rejecting a treating or examining

13   physician's opinion, the Ninth Circuit credits the opinion as a matter of law. Benecke v.

14   Barnhart, 379 F.3d 587, 594 (9th Cir. 2004).

15        "If there is substantial evidence in the record contradicting the opinion of the treating

16   physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" Orn

17   v. Astrue, 495 F.3d 625, 632-33 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(c)(2)).  However,

18   the ALJ must still consider the factors listed in § 404.1527(c)(2)-(6) in determining what weight

19   to accord the opinion of a treating physician.  "Even when contradicted by an opinion of an

20   examining physician that constitutes substantial evidence, the treating physician's opinion is 'still

21   entitled to deference.'" Id. (citing S.S.R. 96–2p at 4, 61 Fed.Reg. at 34,491).  "In many cases, a

22   treating source's medical opinion will be entitled to the greatest weight and should be adopted,

23   even if it does not meet the test for controlling weight." S.S.R. 96–2p at 4, 61 Fed.Reg. at 34,491.

24   ////

25   ////

26   _____

27   Although neither the ALJ's decision nor the Commissioner's opposition refer to Dr. Ruiz's
     opinion, the court still considers the two to be contradictory.  Accordingly, the court will apply
     the "specific and legitimate" standard in this case.

28

6

1        2.      <u>Harvey Sternberg, M.D., Treating Physician</u>

2          a.   <u>Relevant Background</u>

3      Plaintiff began seeing Dr. Sternberg at Mercy Medical Center, Mt. Shasta for a number of

4 issues in June 2011.  AR 626.  During plaintiff's first visit with Dr. Sternberg on June 6, 2011, he

5 was diagnosed with peripheral neuropathy and chronic obstructive pulmonary disease.  AR 626.

6 Dr. Sternberg's medical report also notes that plaintiff reported a history of avascular necrosis of

7 the right hip, obesity, sleep apnea, hypercholesterolemia, and hypertension.  <u>Id.</u>  An imaging

8 report done at Dr. Sternberg's instruction on June 14, 2011, states that plaintiff suffered from

9 heart problems including, but not limited to, a cavity size that was mildly to moderately dilated in

10 the left ventricle; mildly thickened leaflets and regurgitation in the mitral valve; and a mildly

11 dilated cavity size in the right ventricle.  AR 597–98.  A medical report by Dr. Sternberg dated

12 June 27, 2011, also diagnoses plaintiff with early type 2 diabetes and hypercholesterolemia.  AR

13 595.  At that time, Dr. Sternberg recommended that plaintiff continue his current medications and

14 begin taking Lisinopril, Zocor, and Metformin.  <u>Id.</u>  Dr. Sternberg also ordered an EKG and

15 hemoglobin A1C as well as a cardiology evaluation and instructed plaintiff to follow up with him

16 in the next month.  <u>Id.</u>  Plaintiff continued to see Dr. Sternberg approximately once a month with

17 little change in his diagnoses until January 2012.  AR 673, 668, 661, 660, 680–81.

18      On August 15, 2011, Dr. Garrett Wong, M.D., another physician at Mercy Medical

19 Center, instructed plaintiff to undergo a nuclear cardiology stress test with persantine.  AR 617–

20 18.  The test's imaging report found that plaintiff had dilated cardiomyopathy, obstructive sleep

21 apnea, obesity, hypertension, and chronic obstructive pulmonary disease.  <u>Id.</u>  Plaintiff's blood

22 test, also ordered by Dr. Wong on the same day, notes the same diagnoses.  AR 611.  Based on

23 plaintiff's imaging report, Dr. Peter Halt, M.D., another physician at Mercy Medical Center,

24 diagnosed plaintiff with severe cardiomegaly with no evidence of active cardiac ischemia, normal

25 wall motion and ejection fraction, and moderate sized anteroseptal defect and small fixed defect.

26 AR 634–35.  Dr. Halt's report notes that he discussed these findings with Dr. Sternberg.  AR 635.

27      Dr. Sternberg completed two residual functional capacity questionnaires that effectively

28 mirrored one another, one on September 16, 2011, and the other on January 6, 2012.  AR 637–38,

640–41.  Both questionnaires diagnosed plaintiff with cardiomyopathy and chronic hip pain,

causing him pain and fatigue.  Id.  Dr. Sternberg opined in these questionnaires that plaintiff

could (1) walk two city blocks without rest or significant pain; (2) sit for 60 minutes and stand for

10 minutes at one time; (3) sit for 8 hours and stand for 2 hours total during a normal workday;

and (4) frequently lift 10 pounds, occasionally lift 20 pounds, and never lift 50 pounds.  Id.  Dr.

Sternberg also opined that plaintiff would need a job that permitted him to shift positions from

sitting, standing, or walking and would need to take unscheduled breaks every one to two hours

for 15 minutes.  Id.  Dr. Sternberg also noted that plaintiff's medications caused dizziness, and

that plaintiff's impairments would likely cause him to be absent from work more than four times

a month.  Id.

> b.  Analysis

The ALJ decided to afford Dr. Sternberg's opinion less weight as follows:

> I find Dr. Steinberg's [sic] lifting, overall standing/walking, and
> overall sitting limitations to be consistent with the objective
> evidence (Exhibit 24F, 25F). However, I find Dr. Steinberg's [sic]
> limitation that the claimant needs unscheduled breaks of 15 minutes
> every one to two hours and is likely to be absent more than four
> times a month to be not well supported. First, the claimant
> acknowledged improvement after his right hip surgery.
> Furthermore, the claimant's ability to take care of his father in April
> 2011 is not consistent with Dr. Steinberg's [sic] non-exertional
> limitations. For instance, the claimant stated that he rarely left the
> house because he must fully take care of his father, including
> limiting him in and out of the bed and chair (Exhibit 20F/3). The
> claimant further stated that he slept fewer than three hours a night
> because he had to take care of his father. Therefore, Dr. Steinberg's
> [sic] non-exertional limitations merit less weight.

AR 35.

The fact that plaintiff's condition improved after his hip replacement surgery does not

constitute a specific, legitimate reason not to afford Dr. Sternberg's opinion controlling weight.

In determining whether a claimant is disabled, the Commissioner must evaluate the claimant's

"ability to work on a sustained basis."  20 C.F.R. § 404.1512(a).  "Occasional symptom-free

periods—and even the sporadic ability to work—are not inconsistent with disability."  Lester, 81

F.3d at 833.  From April to May 2010, after plaintiff's hip replacement surgery, he began

experiencing only minimal discomfort and ceased taking all medications related to his hip

8

1    condition.  AR 518, 555.  However, by June 6, 2011, Dr. Sternberg was treating plaintiff for

2    cardiomyopathy and chronic hip pain.  AR 637–38.  Dr. Sternberg continued to treat plaintiff

3    until January 2012.  AR 673, 668, 661, 660, 680–81.  Plaintiff's report that his chronic hip pain

4    improved immediately after surgery does not contradict his treating physician's opinion, which is

5    based on doctor's visits that occurred more than a year later.  Id.  To the extent the ALJ concluded

6    that plaintiff's hip condition had disappeared and could not have returned when it reportedly did,

7    the court finds that inference is not reasonably drawn from the record.  See Widmark, 454 F.3d at

8    1066.  Accordingly, the ALJ erred in determining that Dr. Sternberg's opinion should not be

9    afforded controlling weight based on plaintiff's report that his symptoms had improved long

10   before Dr. Sternberg began treating him.

11        The ALJ also asserts that Dr. Sternberg's medical opinion is undermined by plaintiff's

12   reported daily activities and ability to take care of his disabled father.  However, the fact that

13   plaintiff is able to care for his father does not contradict Dr. Sternberg's opinion regarding

14   plaintiff's likely absenteeism from the workplace or the frequency with which plaintiff requires

15   unscheduled breaks.

16        In determining a claimant's residual functional capacity, the ALJ may consider any of the

17   claimant's daily activities that "may be seen as inconsistent with the presence of a condition

18   which would preclude all work activity."  Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990).

19   The ALJ may also take into consideration any of claimant's daily activities that "involve[e] the

20   performance of physical functions that are transferable to a work setting."  Orn, 495 F.3d at 639

21   (citation omitted).  However, a claimant should not be "penalized for attempting to lead [a]

22   normal [life] in the face of [his] limitations."  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir.

23   1989).  Furthermore, "many home activities are not easily transferable to what may be the more

24   grueling environment of the workplace, where it might be impossible to periodically rest or take

25   medication."  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

26        During the time period that Dr. Sternberg treated plaintiff, he acted as his father's

27   caregiver.  AR 571.  As his father's caregiver, plaintiff was responsible for physically assisting

28   him, cleaning the house, shopping, and cooking.  Id.  Plaintiff also reported being able to prepare

1  meals, walk, climb up and down stairs, and do laundry, light housekeeping, and strength-building

2  exercises.  AR 282.  Contrary to the ALJ's assertions, such everyday activities are not necessarily

3  at odds with Dr. Sternberg's assessment of plaintiff's impairments.  AR 637–38, 640–41.

4  Specifically, the record does not indicate that plaintiff's caregiving activities occurred without 15

5  minute breaks every one to two hours.  Thus, the ALJ erred in concluding that plaintiff's reported

6  daily activities contradicted the treating physician's medical opinion.

7        For all these reasons, the court finds that the ALJ has failed to provide specific, legitimate

8  reasons supported by substantial evidence for discounting Dr. Sternberg's opinion regarding

9  plaintiff's impairments.  In light of this error, the court declines to reach plaintiff's argument that

10  the ALJ erred in finding plaintiff could perform other jobs that exist in substantial numbers in the

11  national economy.  Because the ALJ's disability determination is not supported by substantial

12  evidence, it is erroneous.

13  D.     Remand

14        Plaintiff requests that the decision of the ALJ be vacated and his case be remanded for a

15  new hearing.  The decision whether to remand for further proceedings turns upon the likely utility

16  of such proceedings.  Barman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000).  In this matter, this

17  court concludes that outstanding issues remain that must be resolved before a determination of

18  disability can be made.  Pursuant to this remand, the ALJ shall properly consider the opinions of

19  plaintiff's treating physician and re-evaluate plaintiff's residual functional capacity and disability

20  determination accordingly.

21        Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that:

22        1.     Plaintiff's motion for summary judgment (ECF No. 17) is granted; and

23        2.     This matter is remanded for further proceedings consistent with this order.

24  DATED: October 13, 2014

25  _____

ALLISON CLAIRE

26  UNITED STATES MAGISTRATE JUDGE

27

28